UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>*v.*<br>WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of State of the Commonwealth of Massachusetts,<br>*Defendant.* | CASE NO: 1:25-cv-13816<br><br>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.* |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.***

**TABLE OF CONTENTS**

**INTRODUCTION**........................................................................................ 4

**BACKGROUND** ........................................................................................ 5

A. Title III of the Civil Rights Act of 1960 ................................................. 5

B. The Attorney General Is Making a Demand for Federal Election Records under the CRA to Assess Massachusetts's NVRA and HAVA Compliance…....7

**ARGUMENT**…………………………………...……………………..………..8

A. Title III of the Civil Rights Act of 1960……………………………………..…8

B. The Attorney General Is Entitled to Relief under the CRA's Summary Proceedings for Obtaining Federal Election Records………..………………..10

**CONCLUSION**………………………………………………………..……..…..11

# TABLE OF AUTHORITIES

## Cases

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)……………………………………….4, 6, 10

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)……………………………………..5

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)…………………………………………..6, 11

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)……………………………………………………6

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)…………………………………………passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005)……………………………………..………..…10

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)……...................4

## Statutes

52 U.S.C § 20510(a) .......................................................................................................... 10

52 U.S.C. § 20501(b)(3) ..................................................................................................... 7

52 U.S.C. § 20507............................................................................................................. 10

52 U.S.C. § 20507(a)(4)................................................................................................. 7, 9

52 U.S.C. § 20507(i)(1) ...................................................................................................... 7

52 U.S.C. § 20701......................................................................................................... 4, 5, 9

52 U.S.C. § 20703...................................................................................................... 4, 5, 8, 9

52 U.S.C. § 20706............................................................................................................... 8

52 U.S.C. § 21083(a)(1)(A) ................................................................................................ 7

52 U.S.C. § 21083(a)(2)(B)(iii) .......................................................................................... 9

52 U.S.C. § 21083(a)(5)....................................................................................................... 7

52 U.S.C. § 21083(a)(5)(A)(i-ii)......................................................................................... 9

## I. INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On August 14, 2025, the Attorney General, through her representative, made a written demand to Secretary William Francis Galvin ("Secretary Galvin") to produce certain Federal election records covered by the CRA. Dec'l. of Eric Neff, Ex. 3 (Ltr. from Harmeet Dhillon to Sec'y Galvin August 14, 2025) ("August 14 Letter"). That written demand explained that the purpose was for enforcement of the list maintenance requirements of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *Id.* Secretary Galvin has refused to produce the requested federal election records.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel Secretary Galvin to produce the federal election records identified in the written demand. *See State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and*

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

*adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order, compelling Secretary Galvin to produce the Federal election records described in its written demand.

## II. BACKGROUND

### A. Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701. Section 303 of the CRA provides:

> Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative….

52 U.S.C. § 20703.

The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand," nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General is making a demand for federal election records under the CRA to assess Massachusetts's NVRA and HAVA compliance.

On July 22, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Galvin, an officer of election, regarding Massachusetts's compliance with federal list maintenance requirements. *See* Dec'l. of Eric Neff, Ex. 1 ("July 22 Letter"). The NVRA has list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The Department requested information to ascertain Massachusetts's compliance with the NVRA.

On August 7, 2025, Secretary Galvin responded to the Department's July 22 Letter by requesting sixty additional days to prepare a response. *See* Dec'l. of Eric Neff, Ex. 2 (Ltr. from Sec'y Galvin to Maureen Riordan dated August 7, 2025) ("August 7 Letter").

On August 14, 2025, the Department sent a second letter, requesting documents, pursuant to the statewide voter registration list maintenance provisions of the NVRA, HAVA, and the CRA, for a current electronic copy of Massachusetts's computerized statewide voter registration list ("SVRL") including the driver's license number or last four digits of the social security number which is required by HAVA. *See* Dec'l. of Eric Neff, Ex. 3, August 14 Letter. Both the NVRA and HAVA impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §§ 20507(a)(4), 20507(i)(1), 21083(a)(1)(A). HAVA requires verification of voter registrations for federal elections. 52 U.S.C. § 21083(a)(5).

On August 28, 2025, the Department sent a follow-up e-mail to Secretary Galvin, requesting a response. *See* Dec'l. of Eric Neff, Ex. 4 (E-Mail from Michael Gates to Sec'y Galvin August 28, 2025) ("August 28 E-Mail").

The Department received no further written correspondence from Secretary Galvin, so on or about December 4, 2025, the Department contacted First Deputy Secretary Tassinari, who advised that Massachusetts would not provide its SVRL.

## III. ARGUMENT

### A. The United States is entitled to an order compelling production under the CRA.

An order to show cause for production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's August 14 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a federal election; (2) directing that demand to Secretary Galvin, officer of election as defined by Section 306 of the CRA;[2] (3) explaining the basis of the demand as Massachusetts' possible lack of compliance with the voter registration list requirements enumerated in the Department's July 22 Letter, Dec'l. of Eric Neff, Ex. 1; and (4) stating that the purpose of the demand is to assist in the Department's determination of whether Massachusetts's list maintenance program complies with the NVRA and HAVA. Dec'l. of Eric Neff, Ex. 3 ("August 14 Letter").

---

[2] Section 306 provides:

> As used in this chapter, the term "officer of election" means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

Secretary Galvin's refusal to produce anything is plainly insufficient to meet the CRA's requirements. Officers of election have no discretion to limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers"). Massachusetts's election officers certainly have no authority to deny the Attorney General's request altogether.

The Attorney General cannot assess compliance with HAVA and the NVRA absent full, unredacted SVRL and other requested federal election records, pertaining to Massachusetts's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number. For those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083(a)(5)(A)(i-ii). Without the unredacted data, including these identification numbers, the Attorney General cannot evaluate Massachusetts's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the commonwealth has a reasonable program of identifying and removing duplicate voter registrations. Massachusetts, twenty-four other states, and the District of Columbia provide the unredacted voter file to the Electronic Registration Information Center ("ERIC") for the purpose of list maintenance.[3]

The United States needs the same unredacted federal election records to assess Massachusetts's compliance with the NVRA. Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…". 52 U.S.C. § 20507(a)(4). For example, use of

[3] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Dec. 9, 2025).

unredacted voter data ensures that matches to identify deceased voters are more accurate and complete.

Secretary Galvin has rejected the Attorney General's written demand pursuant to the CRA to produce Massachusetts's statewide VRL and other federal election records. Consequently, the United States respectfully requests that this Court issue an Order compelling Secretary Galvin and the Commonwealth of Massachusetts to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

**B. The Attorney General is entitled to relief under the CRA's summary proceedings for obtaining federal election records.**

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Galvin, as an officer of election for Massachusetts, must produce the voter-registration lists and other federal election records demanded by the Attorney General.[4] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records, because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

[4] Although this Motion to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225–26. To institute this proceeding, the United States need only file a "simple statement," describing its written demand for the federal election records and explaining that Secretary Galvin, acting as an officer of election for Massachusetts, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an order directing Secretary Galvin and the Commonwealth of Massachusetts to produce the federal election records described in the Attorney General's written demand.

## IV. CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order compelling Secretary Galvin to comply with the Attorney General's request for all federal election records described in the Department's August 14 Letter. Those records should be provided electronically to the United States within five days, or within such time as this Court deems reasonable. *See Gordon*, 218 F. Supp. at 827 (deeming "fifteen days [a]s a reasonable time"). For the Court's convenience, a proposed form of order is provided as Ex. 1.

Dated: December 12, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

David D. Vandenberg
ERIC NEFF
Acting Chief, Voting Section
Civil Rights Division

TIMOTHY F. MELLETT
DAVID D. VANDENBERG
Trial Attorneys, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street, NE, Room 8.143
Washington, D.C. 20002
Eric.Neff@usdoj.gov
Timothy.Mellett@usdoj.gov
David.Vandenberg@usdoj.gov
Tel. (202) 307-2767
*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ David D. Vandenberg*
David Vandenberg