# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,<br><br>    Defendant. | Case No. 25-cv-13816<br>(Hon. Leo T. Sorokin) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF COMMON CAUSE AND JANE DOE INC. TO INTERVENE AS DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    A.    DOJ's Efforts to Obtain Private Voter Information ........................................ 2

    B.    Proposed Intervenors .................................................................................... 7

ARGUMENT ...................................................................................................................... 9

I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT ................... 9

    A.    The Motion to Intervene Is Timely ............................................................... 9

    B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation ............... 10

    C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors ............. 14

    D.    Secretary Galvin's Interests Are Different from Those of Proposed Intervenors. ........ 15

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE
INTERVENTION ............................................................................................................. 18

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Allco Renewable Energy Ltd. v. Haaland*,
No. 1:22-cv-10921-IT, 2022 WL 2117828 (D. Mass. June 13, 2022) ....................................11

*American Farm Bureau Federation v. EPA*,
278 F.R.D. 98 (M.D. Pa. 2011) ............................................. 16

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006).............................................. 14, 15

*Berger v. N.C. State Conference of the NAACP*,
597 U.S. 179 (2022) ............................................. 16

*Conservation L. Found. of New Eng., Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992)............................................. 15

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers*,
219 F.3d 31 (1st Cir. 2000)............................................11, 14

*Doe v. Town of Lisbon*,
No. 1:21-cv-944, 2022 WL 2274785 (D.N.H. June 23, 2022)................................ 18

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 4:20-cv-2078, 2020 WL 8262029 (M.D. Pa. Nov. 12, 2020)..................................... 13, 19

*Donaldson v. United States*,
400 U.S. 517 (1971) ............................................. 10

*In re Efron*,
746 F.3d 30 (1st Cir. 2014)............................................. 10

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024)..................................... 16

*Judicial Watch, Inc. v. Pennsylvania*,
Case No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020)...................................... 19

*Kobach v U.S. Election Assistance Commission*,
No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ......................................... 14, 17

*LaRoque v. Holder*,
755 F. Supp. 2d 156 (D.D.C. 2010)............................................. 14

*Maguire v. FMR LLC*,
   No. 16-499 S, 2016 WL 6998622 (D.R.I. Nov. 29, 2016) ................................................... 10, 18

*Melone v. Coit*,
   100 F.4th 21 (1st Cir. 2024)........................................................................................11, 18

*Narragansett Electric Co. v. Constellation Energy Commodities Group Inc.*,
   526 F. Supp. 2d 260 (D.R.I. 2007) ...................................................................................... 19

*National Liability & Fire Insurance Co. v. Carman*,
   No. 17-038WES, 2018 WL 4080576 (D.R.I. Aug. 27, 2018).................................................. 10

*NERO International Holding Co. v. NEROtix Unlimited Inc.*,
   585 F. Supp. 3d 152, 156 (D. Mass. 2022)........................................................................... 10

*PA Fair Elections v. Pennsylvania Department of State*,
   337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................................................... 6

*Photographic Illustrators Corp. v. Trade Serv. Co., LLC*,
   No. 15-CV-13157-ADB, 2016 WL 107938 (D. Mass. Jan. 8, 2016)........................................ 18

*Public Interest Legal Found., Inc. v. Winfrey*,
   463 F. Supp. 3d 795 (E.D. Mich. 2020) ............................................................................... 14

*Public Service Co. of N.H. v. Patch*,
   136 F.3d 197 (1st Cir. 1998)................................................................................................ 9

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, ................................................................
   584 F.3d 1 (1st Cir. 2009)................................................................................................... 9

*Scalia v. Tara Constr., Inc.*,
   No. CV 19-10369-LTS, 2020 WL 5983235 (D. Mass. Oct. 7, 2020) ...................................... 12

*SEC v. LBRY, Inc.*,
   26 F.4th 96 (1st Cir. 2022)................................................................................................... 9

*Selcuk v. Pate*,
   No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961 (S.D. Iowa Nov. 3, 2024) ........................ 13

*State v. Director, U.S. Fish & Wildlife Serv.*,
   262 F.3d 13 (1st Cir. 2001)................................................................................................. 15

*Strahan v. Sec'y, Massachusetts Exec. Off. of Energy & Env't Affs.*,
   No. 19-CV-10639-IT, 2021 WL 621202 (D. Mass. Feb. 17, 2021) .................................... 17, 19

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,

308 F.R.D. 39, 46 (D. Mass.). ................................................................................ 10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,

807 F.3d 472 (1st Cir. 2015)................................................................................... 15

*Texas v. United States*,

798 F. 3d 1108 (D.C. Cir. 2015) ............................................................................ 13

*Tirrell v. Edelblut*,

No. 24-cv-251, 2025 WL 1939965 (D.N.H. July 15, 2025).................................... 19

*T-Mobile Northeast LLC v. Town of Barnstable*,

969 F.3d 33 (1st Cir. 2020)..................................................................................... 16

*Town of Chester v. Laroe Estates, Inc.*,

581 U.S. 433 (2017) ................................................................................................11

*Ungar v. Arafat*,

634 F.3d 46 (1st Cir. 2011) ................................................................................10, 11

*Victim Rights Law Center. v. Rosenfelt*,

988 F.3d 556 (1st Cir. 2021).................................................................................... 9

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025,
https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html 5

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024,
https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/................................................................................................................ 6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025,
https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html .............. 4

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA (Aug. 26, 2025),
https://www.propublica.org/article/heather-honey-dhs-election-security .................................. 6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025,
https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ................................................................................................................ 5

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024,

https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump ............................................................................................................................................. 6

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025),

https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/ .......................................................................... 5

Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024,

https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html ................................................................................................. 6

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025),

https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security 5, 7

Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025,

https://stateline.org/2025/07/16/trumps-doj-wants-states-to-turn-over-voter-lists-election-info/ 7

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ............................................................... 6

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025),

https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/ ................................................................................ 6

Press Release, U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),

https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls ............................................................................................................ 4

Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025) ................................................................................. 4

Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025),

https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls ..................................................................................................................... 4

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Rᴇᴜᴛᴇʀs (Sept. 9, 2025),

https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 ........................................................................... 5

**Statutes**

5 U.S.C. § 552a ...........................................................................................................11

52 U.S.C. § 20703 ................................................................................................. 14, 17

52 U.S.C. § 20704 ...................................................................................................... 4

G. L. c. 214, § 1B ......................................................................................................11

G. L. c. 93H, § 1 ........................................................................................................11

G. L. c. 93H, § 2 ........................................................................................................11

G. L. c. 51, § 4(d) ...................................................................................................... 8

**Rules**

Fed. R. Civ. P. 24(a) .............................................................................................. 1, 8

Fed. R. Civ. P. 24(b) ............................................................................................ 1, 16

Fed. R. Civ. P. 24(c) ................................................................................................. 1

L.R. Civ. P. 7(a) ........................................................................................................ 1

## INTRODUCTION

The United States seeks to force Massachusetts to turn over voters' sensitive personal information and data.  It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement.  These efforts are being driven by self-styled "election-integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present Administration.

Proposed Intervenors include Common Cause, a non-partisan, good-government organization dedicated to grassroots voter engagement in Massachusetts, and Jane Doe Inc., an organization dedicated to representing and protecting survivors of domestic violence and sexual assault.  The interests of these organizations' members and the communities they serve, and their own work, are threatened by the relief sought by the United States in this case. Proposed Intervenors also include a Massachusetts voter, Juan Pablo Jaramillo, whose rights are directly threatened.  Proposed Intervenors have a strong interest in preventing the United States' requests for unfettered and total access to the most sensitive aspects of Massachusetts's non-public voter data from being used to harass and potentially disenfranchise voters.  Common Cause works to expand access to the ballot and civic engagement, as well as to protect civil liberties, and thus has an interest in protecting the voting and privacy rights of its members and all Massachusetts voters. Its grassroots work engaging voters is threatened by the United States' request for sensitive, non-public voter data, which risks discouraging Bay Staters from registering to vote.  Jane Doe Inc. works to protect survivors of domestic violence, whose Massachusetts voter information is specially protected by law due to those voters' heightened privacy needs.  The privacy and voting-rights interests of individual Massachusetts voters, including Common Cause's and Jane Doe Inc.'s

members and the people they serve as well as Mr. Jaramillo and others similarly situated, are also directly at stake here. Proposed Intervenors and their members and constituents include members of some of those groups who are under particular threat from the United States' requested form of relief, such as voters who are naturalized citizens like Mr. Jaramillo and voters whose personal information is especially sensitive and who thus have heightened privacy interests, like those Bay Staters served by JDI.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because both their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendant, who as a state actor is subject to broader public policy considerations external to the legal issues presented in this case. Proposed Intervenors' unique interests in this case, their unique perspective, and their unique motivation to interrogate the purpose of the United States' sweeping request for non-public voter data will ensure the full development of the record here and aid the Court in its resolution of this case. As a result, Proposed Intervenors ask this Court to grant intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b).

## BACKGROUND

### A. DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 5, 2025), https://perma.cc/A73C-8YDZ. On July 22, 2025, it sent such a letter to Defendant William F. Galvin, Secretary of the Commonwealth of Massachusetts (hereinafter "Secretary Galvin"),

demanding that Massachusetts provide to DOJ its complete, non-public voter database.  *See* Decl. of Eric Neff, Exhibit 1, Letter of Michael Gates to the Hon. William Galvin dated July 22, 2025, Dkt. No. 7-1 ("July 22 Letter").   DOJ specifically requested that the electronic voter file be produced with "all fields" included.  *Id.*   The July 22 Letter propounded several questions regarding Massachusetts's voter registration and list maintenance procedures.  *Id.* at 2.  It also requested that Massachusetts provide information about purported "registered voters identified as ineligible to vote" due to being non-citizens or due to a felony conviction.  *Id.* at 2.  DOJ asked Massachusetts to respond within 14 days.  *Id.*

DOJ's focus on certain groups of voters as part of its request is consistent with its communications with other states.  In letters to other states requesting the same private voter data, the DOJ has also requested information about how election officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship.[1]

In response, an official from Secretary Galvin's Elections Division informed the Department of Justice that 60 days would be required for a response.  Decl. of Eric Neff, Exhibit 2, Letter of Michelle Tassinari dated August 7, 2025, Dkt. No. 7-2.

---

[1] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

One week later, DOJ sent another letter, demanding the requested information sooner and reiterating its demand for the full electronic voter file, which it again stated "must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number."  Decl. of Eric Neff, Exhibit  3, Letter of Harmeet K. Dhillon to the Hon. William Galvin dated Aug. 14, 2025, Dkt. No. 7-3 ("Aug. 14 Letter") (emphasis in the original).  DOJ disclaimed any privacy issues, based on the fact that the Civil Rights Act of 1960 prohibits sharing the information DOJ sought directly with the public.  *See id.* at 3 (citing 52 U.S.C. § 20701).

When Massachusetts did not provide the requested information, the United States responded by filing this lawsuit—one of at least twenty-two that DOJ has initiated recently against states and election officials—seeking to force the production of sensitive voter data.[2]

Notably, according to public reporting, DOJ's request for private, sensitive voter data from Massachusetts and other states appears to be connected to novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database analysis to scrutinize state voter rolls.  According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information."  Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9,

---

[2] *See* Press Release, U.S. Dep't of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-states-failure-produce-voter-rolls; Press Release, U.S. Dep't of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),  https://perma.cc/M69P-YCVC.

2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating these novel efforts with the federal Department of Homeland Security (DHS). *Id.*; Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ("Shorman, *DOJ Sharing Lists with Homeland Security*"); Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One article extensively quoted a recently-departed lawyer from DOJ's Civil Rights Division, describing DOJ's aims in this case and others like it:

> "We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data . . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.").

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside the federal government who have previously sought to disenfranchise voters and overturn elections. Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple states and now serves as DHS's "deputy assistant secretary for election

integrity."[3] Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who has promoted the use of artificial intelligence to challenge registered voters.[4] These actors and their associates have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to mass challenge and attempt to disenfranchise voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless).[5]

---

[3] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

[4] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

[5] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot*

The ultimate goal of these information requests appears to be to purge voters from the rolls and otherwise challenge the validity of registered voters across the Nation. The Administration has confirmed that DOJ is sharing the requested information with the DHS, which will use the data to "scrub aliens from voter rolls." *See* Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025, https://stateline.org/2025/07/16/trumps-doj-wants-states-to-turn-over-voter-lists-election-info/ (characterizing letters in nine states); Shorman, *DOJ Sharing Lists with Homeland Security*. Meanwhile, DOJ has recently begun asking states to sign a "memorandum of understanding"[6] regarding its requests for statewide voter files, which includes terms that would allow DOJ to identify supposedly ineligible voters using the data and to compel states to remove these persons from the voter rolls—both functions that federal law assigns to state elections officials, not federal ones, *see, e.g.*, 52 U.S.C. § 20507.

### B. Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Massachusetts voters register to vote and exercise their right of suffrage at each election. *See* Ex. A to Declaration of Suzanne Schlossberg in Supp. of Mot. for Intervention ("Schlossberg Decl."), Decl. of Common Cause Massachusetts Executive Director Geoffrey Foster ("Foster Decl.") ¶¶ 2–10. Common Cause expends significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote. *See* Foster Decl. ¶¶ 9–13. The success of

---

*Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[6] The full memorandum of understanding is attached as Exhibit 1 to the Proposed Motion to Dismiss filed in support of this intervention motion (Mot., Ex. B).

these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored.  *See* Foster Decl. ¶¶ 9–13.  Common Cause also has over 28,000 members in Massachusetts.  *See* Foster Decl. ¶ 4.  Those members include numerous Massachusetts voters, whose personal data will be provided to the federal government if DOJ prevails in this lawsuit.  *See* Foster Decl. ¶ 6.

Proposed Intervenor Jane Doe Inc., the Massachusetts Coalition Against Sexual Assault and Domestic Violence ("JDI") is a coalition of member organizations serving and representing survivors of sexual assault and domestic violence.  *See* Schlossberg Decl. Ex. B, Decl. of JDI Executive Director Hema Serang-Sieminski ("Serang-Sieminski Decl.") ¶¶ 3–4.  Massachusetts law allows for confidential voter registration procedures for voters whose identifying information is particularly important to keep private, for example due to their status as survivors of domestic violence or because they do sensitive work such as providing gender-affirming care to transgender people.  *See* G. L. c. 51, §§ 4(d), 44 (providing that people with court-ordered protection, or who reside in protective shelters, or who meet certain other criteria including participation in the address confidentiality program, "shall not appear on the street list and such names shall not be disclosed to any person");  950 CMR 49.00 *et seq.* (providing comprehensive regulations for confidential voter registration); *see also* Serang-Sieminski Decl. ¶¶ 5–10.  JDI's member programs serve victims of domestic violence and sexual assault who use these confidential registration processes, and JDI's work includes helping voters register confidentially and advocating for these confidential registration procedures as a way to make sure victims of domestic violence can participate in politics safely and without fear.  Serang-Sieminski Decl. ¶¶ 11–12.  If the United States's demand for all Massachusetts voter data is granted, then the confidentiality of the voter

data of victims of domestic violence will be compromised, JDI's work will be burdened, and those persons who JDI fights for and represents will be much more reluctant to register to vote and participate in politics in the future.  Serang-Sieminski Decl. ¶¶ 13–16.

Proposed Intervenors and their members include voters who are at particular risk of being caught up in the DOJ's efforts to unlawfully remove voters from voter rolls, such as Mr. Jaramillo who is a naturalized citizen.  *See* Schlossberg Decl. Ex. C, Decl. of Juan Pablo Jaramillo ("Jaramillo Decl.") ¶¶ 4–12.

## ARGUMENT

### I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the First Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing:

> (1) the timeliness of its motion; (2) a concrete interest in the pending action; (3) a realistic threat that resolution of the pending action will hinder its ability to effectuate that interest; and (4) the absence of adequate representation by any existing party.

*SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022) (quotation marks and brackets omitted).  "[A]n applicant for intervention need only make a minimal showing that the presentation afforded by existing parties likely will prove inadequate."  *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998); *accord Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021).  Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, this Court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights."  *R & G Mortg. Corp. v.*

*Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009).  In assessing the timeliness of an intervention motion, "the most important factor is the length of time that the putative intervenor knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention."  *In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014).

This motion is indisputably timely.  The United States filed this suit on December 11, 2025, and, upon receiving notice of the suit, the Proposed Intervenors promptly prepared this motion.  *See, e.g., NERO Int'l Holding Co. v. NEROtix Unlimited Inc.*, 585 F. Supp. 3d 152, 156 (D. Mass. 2022) (motion to intervene timely where filed roughly two-and-a-half months after Plaintiffs filed the complaint and two weeks before the court held a scheduling conference); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 46 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (motion to intervene timely where filed before initial scheduling conference has taken place and before court issued scheduling order); *see also, e.g., Maguire v. FMR LLC*, No. 16-499 S, 2016 WL 6998622, at *1 (D.R.I. Nov. 29, 2016) (motion filed ten days after the filing of complaint was "undoubtedly timely").  Defendant Secretary Galvin has not yet appeared or filed an answer or a motion to dismiss, and no scheduling order on discovery has taken place In other words, this litigation is at its earliest stages *See Efron*, 746 F.3d at 35 ("[T]imeliness is to be gauged from all the circumstances, including the stage to which the proceedings have progressed before intervention is sought." (quotation marks and citation omitted)).

### B.   Proposed Intervenors Have Concrete Interests in the Underlying Litigation

The Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation.  *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  "To satisfy the interest requirement, . . . [a party must] assert, at a minimum, that it has something at stake in the underlying litigation . . . ."  *Ungar v. Arafat*, 634 F.3d 46, 52 (1st Cir. 2011).  Although the interest requirement "is not amenable to a surgically precise definition," a claimed interest must be "direct"

rather than "too contingent or speculative." *Id* at 51–52.[7]  Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, the Proposed Intervenors and their members have a right to privacy in the sensitive voter data the United States seeks.  DOJ has demanded that Secretary Galvin turn over voters' full name, date of birth, residential address, driver's license number, and the last four digits of their social security numbers.  *E.g.*, Aug. 14 Letter at 1.  This type of sensitive personal information is protected from disclosure by Massachusetts law.  *See, e.g.*, G. L. c. 93H, §§ 1, 2 (driver's license and social security numbers are protected information under state law);  *see also, e.g.*, G. L. c. 4, § 7(26) (excluding from the definition of "pubic records" "any … materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy," as well as personal information related to specific persons such as judicial and state employees and providers of reproductive health services and gender-affirming care); G. L. c. 214, § 1B (Massachusetts citizens "shall have a right against unreasonable, substantial or serious interference with his privacy").  It is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks.  *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

---

[7] The interest requirement is distinct from Article III standing and "'whether an intervenor-defendant must show some separate form of standing' is a needless inquiry at the intervention stage." *Allco Renewable Energy Ltd. v. Haaland*, No. 22-cv-10921-IT, 2022 WL 2117828, at *1 n.2 (D. Mass. June 13, 2022) (quoting *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000)).  Proposed Intervenors would in any case not need to separately establish Article III standing because they seek to intervene as *defendants*, not plaintiffs. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017); *Melone v. Coit*, 100 F.4th 21, 28–29 (1st Cir. 2024).

These privacy interests are significant and inure to all Massachusetts voters, including Common Cause's and JDI's members and constituents who are Massachusetts voters.  Foster Decl. ¶¶ 4, 6; Serang-Sieminski Decl. ¶¶ 11–16; Jaramillo Decl. ¶¶ 10–11.  Moreover, JDI's members have heightened privacy interests in preventing the disclosure of their personal information because of their status as survivors of domestic violence and sexual assault—interests that are specially protected by Massachusetts law.  Serang-Sieminski Decl. ¶¶ 5–16.  Protecting the privacy of such confidential information is itself a sufficient interest to support intervention.  *See, e.g.*, *Scalia v. Tara Constr., Inc.*, No. CV 19-10369-LTS, 2020 WL 5983235, at *1 (D. Mass. Oct. 7, 2020) (allowing intervention "to challenge discovery requests seeking information about [intervenor] that is protected as confidential under state and federal law").

*Second*, based on its own statements, the data DOJ seeks is likely to be used to challenge the voter registration of certain voters, including voters with felony convictions (even if properly entitled to vote under state law); voters who have moved within Massachusetts or left the state and then returned (but might be inaccurately deemed "duplicate" voters or "out-of-state" voters due to a shoddy or untested matching process deployed by DOJ or other federal actors); and voters who are naturalized citizens (but who may have indicated they were not a citizen on some government form prior to their naturalization).  *See supra* 2–7.  These voters include Proposed Intervenors and their members.  In particular, Proposed Intervenor Mr. Jaramillo is a naturalized citizen; he is concerned that an attempt to demand States purge the voter rolls based on database matching using the names of persons who were once non-citizens could ensnare people like him.  Jaramillo Decl. ¶¶ 9–11. *Cf. Selcuk v. Pate*, No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program, based on database-matching, which purportedly targeted alleged noncitizens that flagged 2,176 voters, of whom at least 88% were citizens eligible

to vote, many of them naturalized citizens). Proposed Intervenors and their members and constituents have a concrete interest in not being disenfranchised by so-called "election integrity measures."

*Third*, Common Cause as an organization has a protectable interest at stake because their core mission as an organization will be harmed if the relief sought by the United States is granted. For one, Common Cause's voter registration activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government (and ingested into an unauthorized and illegal national database). *See* Foster Decl. ¶¶ 6, 9–13. Moreover, Common Cause will be further harmed if and when the sensitive voter data sought by the United States is then used to engage in mass challenges of registered voters by "election integrity" activists wielding the power of the federal government. Such mass challenges will force Common Cause to redirect resources towards educating the public about threats to voting rights and mitigating the disenfranchisement of existing voters, and away from their core activities of registering voters and engaging new voters in the democratic process. *See* Foster Decl. ¶¶ 6, 9–13. And JDI's critical organizational work protecting and advancing the interests of survivors of domestic violence will also be burdened if the United States' demand succeeds and the confidential voter information of victims of domestic violence is disclosed. Serang-Sieminski Decl. ¶¶ 12–16. Such disclosure will make Bay Staters who have survived sexual assault and domestic violence and who need the highest privacy protection more reluctant to register, vote, and make their voices heard in the political process. Serang-Sieminski Decl. ¶¶ 12–16.

Courts routinely find that non-partisan public interest organizations, like Common Cause, should be granted intervention in election-related cases, demonstrating the significantly

protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 795, 799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, 755 F. Supp. 2d 156, 162 n.3 (D.D.C. 2010), *rev'd in part on unrelated grounds*, 650 F.3d 777 (D.C. Cir. 2011). This case is no exception. Indeed, in a similar case brought by DOJ challenging California's refusal to turn over sensitive voter information, such organizations were granted intervention. *See* Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. 25 (granting Common Cause intervention); Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70 (granting intervention of League of Women Voters and others); *see also* Op. & Order, *United States v. Oregon*, No. 25-cv-01666, (D. Or. Dec. 5, 2025), Dkt. No. 52 (granting intervention in Oregon case).

### C. Disposition of this Case May Threaten the Interests of Proposed Intervenors

Proposed Intervenors also satisfy the third prong of the intervention analysis because the litigation may result in an order that directly affects their interests. *See B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). "[E]ven a small threat" to proposed Defendant-Intervenors' interests suffices to show that those interests may be "adversely affected." *Cotter*, 219 F.3d at 35. And here, the threat is significant.

Specifically, the United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel Production of Records and Mem. of Law in Supp., Dkt. Nos. 6 & 7. This attempt to secure the irrevocable disclosure of private voter data to actors who

may misuse it in any number of ways, including by mass-challenging or otherwise attacking Bay Staters' right to vote, at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests now.

**D.    Secretary Galvin's Interests Are Different from Those of Proposed Intervenors.**

A proposed intervenor's "burden of establishing inadequate representation should be treated as minimal and can be satisfied by showing that representation of the interest *may* be inadequate." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (internal quotation marks and brackets omitted; emphasis in original). Critically, the proposed intervenor may show inadequacy by "demonstrat[ing] that its interests are *sufficiently different* in kind or degree from those of the named party." *B. Fernandez*, 440 F.3d at 546 (emphasis added).  It is true that when "a group with recognized interests wishes to intervene and defend an action of the government which the government is itself defending," courts presume "subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor." *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).  However, "there is danger in a mechanistic application of such language" because this presumption "means no more . . . than calling for an adequate explanation as to why what is assumed . . . is not so." *Id.*  Ultimately, the proposed intervenor must show only that the interests of the named defendant are sufficiently different that "representation *may* be inadequate, not that it is inadequate." *Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (emphasis added); *accord NERO Int'l*, 585 F. Supp. 3d at 157 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Proposed Intervenors meet this burden here.  *See, e.g.*, *Scalia*, 2020 WL 5983235, at *1.

As a government official, Secretary Galvin has a generalized interest in carrying out his office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources.  He also must consider broader public policy concerns, including the need to maintain working relationships with federal officials.

In contrast, Proposed Intervenors will "add [a] missing element" to this litigation, making the existing representation sufficiently different, and therefore inadequate: the perspective of civil rights groups whose sole commitment is to ensuring ballot access and protecting voters whose rights are at risk, including voters with the most serious privacy interests at stake.  *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020).  There may be arguments and issues that Secretary Galvin may not raise that are critical to organizations like Common Cause and JDI and individual voters like Mr. Jaramillo.  As one example, courts have granted intervention based on a concern that the broader considerations that government actors must consider  can motivate elections officials to pursue a settlement that does not meet the needs of intervenors or of their members.  *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and the Proposed Intervenors' personal and particular interest in the privacy of their

own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency). That is especially true here where the "real targets" of DOJ's requests are the voters whose information will be disclosed and reportedly will be fed into an unauthorized federal database, not the Secretary himself. *Cf. Strahan v. Sec'y, Massachusetts Exec. Off. of Energy & Env't Affs.*, No. 19-CV-10639-IT, 2021 WL 621202, at *6 (D. Mass. Feb. 17, 2021)

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors include a good-government, pro-democracy organization representing individual Massachusetts citizens and a coalition of organizations that represent and advocate for victims of domestic violence who register to vote confidentially under Massachusetts law, as well as a Massachusetts voter who is at heightened risk of being targeted. If this case proceeds past the Rule 12 stage, Proposed Intervenors' unique perspective will lead them to pursue discovery that the named defendant might not otherwise pursue into how the United States'

17

requests and plans for sensitive voter data would threaten their privacy and right to vote.  That is another concrete way in which Proposed Intervenors have a distinct interest justifying intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court declines to grant intervention as of right, it should grant permissive intervention under Federal Rule of Civil Procedure 24(b).  A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  The decision to allow permissive intervention "is highly discretionary" and a court "may consider almost any factor rationally relevant in making that determination."  *Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024) (quotation marks omitted).  Because Proposed Intervenors may meaningfully contribute to the development of factual and legal issues in this case, permissive intervention is appropriate.

As discussed above, this motion is timely, coming shortly after the case began and prior to any discovery or motion practice.  *E.g.*, *Photographic Illustrators Corp. v. Trade Serv. Co., LLC*, No. 15-CV-13157-ADB, 2016 WL 107938, at *2 (D. Mass. Jan. 8, 2016); *accord Maguire*, 2016 WL 6998622, at *2.  Because Proposed Intervenors seek to join the case at the beginning, their involvement runs no risk of delaying proceedings.  *See id.*; *accord Doe v. Town of Lisbon*, No. 1:21-cv-944, 2022 WL 2274785, at *3 (D.N.H. June 23, 2022) (allowing intervention where, among other things, the motion came "in the preliminary stages of the case").

Moreover, Proposed Intervenors' defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to compel Massachusetts to produce the requested personal information; (2) whether federal and state privacy protections prohibit the disclosure of that information; and (3) whether the United States' motivations and its

potential uses for the data sought are permissible.  Proposed Intervenors' distinct perspective on the legal and factual issues before the Court, and their incentive to protect their own rights by developing and exposing the facts regarding the actual basis, purpose, and contemplated uses of the information requests at issue, will complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.  Proposed Intervenors are "not seeking to inject any new issues" into the dispute; instead, they are trying to offer their unique perspective to resolve the existing ones.  *E.g.*, *Narragansett Elec. Co. v. Constellation Energy Commodities Grp. Inc.*, 526 F. Supp. 2d 260, 275 (D.R.I. 2007).

Based on such unique perspectives, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action.  *See, e.g.*, *Strahan v*, 2021 WL 621202, at *6 (allowing permissive intervention for lobsterman association where the real target of plaintiff's efforts was not the Commonwealth itself, but the entities the Commonwealth regulates); *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *3–4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); Order at 3, *Judicial Watch, Inc. v. Pennsylvania*, Case No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 (granting permissive intervention in NVRA case to Common Cause upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc.*, 2020 WL 8262029, at *1 (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)).  This Court should do the same here.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: December 22, 2025

Respectfully submitted,

/s/_____Suzanne Schlossberg_____

Ari J. Savitzky*
Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
slakin@aclu.org

Megan Keenan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
Tel.: (202) 457-0800
mkeenan@aclu.org

*application for admission pro hac vice forthcoming*

Jessie J. Rossman (BBO # 670685)
Suzanne Schlossberg (BBO #703914)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
Tel.: (617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 22, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record and by email on counsel for the United States and Defendant Galvin.

/s/_____<u>Suzanne Schlossberg</u>_____