# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,<br><br>    Defendant. | Case No. 1:25-cv-13816 |

## NEW ENGLAND STATE AREA CONFERENCE OF THE NAACP AND THE MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL PRODUCTION

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to bypass that entire process by adjudicating a "motion to compel production of records" at the very start of the case. ECF No. 6. This may sound like an innocuous discovery motion, but it is no such thing—it would compel the final relief that DOJ seeks in this action. Nothing in the Federal Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to evade the Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that in circumstances involving identical statutory language, "the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).

As federal courts in California and Oregon recently held in parallel litigation against those states, the very Civil Rights Act claim that DOJ brings here is governed by the Federal Rules rather than some special procedure absent from the statute's text. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, --- F. Supp. 3d. ---, 2026 WL 118807 at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 at *8 (D. Or. Feb. 5, 2026). This

1

Court should reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion to compel, and allow this action to unfold as prescribed by the Federal Rules. And, procedural issues aside, DOJ is not entitled to the relief it seeks for the reasons given in Intervenor-Defendants' contemporaneously filed motion to dismiss.

## BACKGROUND[1]

DOJ filed this suit on December 11, 2025, seeking to compel Defendant William F. Galvin, Massachusetts's Secretary of the Commonwealth, to turn over Massachusetts's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960 ("CRA"). *See id.* ¶¶ 28–30. DOJ contends that it is entitled to access the list under the CRA, for the stated purpose of assessing Massachusetts's compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See id.* ¶ 22.

As Intervenor-Defendants explain in their motion to dismiss, filed contemporaneously with this opposition, the CRA cannot support DOJ's sweeping and novel demand. *See generally* Mem. in Support of Mot. to Dismiss, ECF No. 54. DOJ states no lawful, truthful basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Massachusetts—much less all 40-plus States of which DOJ is making this same demand—is violating those statutes, and investigating compliance with those statutes is not a lawful purpose for an investigation under the CRA in any event, because it falls outside the CRA's focus on constitutional voting rights. *See id.*, Argument § I. It is also not the true purpose for DOJ's demand, which is instead to build an unprecedented and unauthorized nationwide voter

---

[1] Intervenor-Defendants' Motion to Dismiss, filed contemporaneously with this filing, further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Massachusetts and throughout the country.

2

list and—as its own senior official has admitted—to use the information obtained to attempt to compel the removal of *hundreds of thousands of voters* from the rolls. *See id.*, Background § II; Argument § I. The President of the United States, in fact, openly aspires to nationalize control over state elections. *See id.*, Background § II; Argument § I. In other words, DOJ's true purpose appears to be to *impede* constitutional voting rights, not protect them. This is not a lawful purpose for the demand of these records under the CRA. Rather, it is antithetical to that Act. And DOJ has not complied with the federal privacy laws that would be necessary for it to collect the private information it demands, even if it were otherwise entitled to it. *See id.*, Argument § III.

In the motion to compel, DOJ asks the Court to ignore those issues—and other issues raised by the Secretary of the Commonwealth and the Common Cause intervenors in their own motions to dismiss—and skip straight to compelling production of the full set of information that DOJ demands. It asks the Court to "[o]rder Defendant to produce an electronic copy of the Massachusetts [S]tatewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. Compel Prod. at 2, ECF No. 6.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in the CRA's text supports DOJ's contention that the CRA "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. in Supp. of Mot. Compel Prod. at 10, ECF No. 7. And DOJ is wrong to minimize the Court's role in reviewing the lawfulness of the relief it seeks. The Court should deny DOJ's motion and permit this litigation to unfold under the normal course—starting with resolving the motions to dismiss DOJ's baseless claim.

**I.     The Federal Rules govern DOJ's claim.**

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts,

3

except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve the CRA. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if Title III document requests could be characterized as a subpoena, they would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provide an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in the CRA.

As two federal courts have now explained, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."[2] *Weber*, 2026 WL 118807, at *8; *see Oregon,* 2026 WL 318402 at *8 (consulting Title III's text). DOJ identifies not a word to support its demand for an immediate grant of the final relief it seeks in this case. The statute says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nothing in that language suggests that the "appropriate process" should be something other than that which federal courts ordinarily use to resolve contested cases. *Weber*, 2026 WL 118807, at *8 (exercising "appropriate process" by applying the Federal Rules of Civil Procedure). And as the Supreme Court has held, where a statute

---

[2] DOJ's complaints in California and Oregon included a CRA claim advanced under the same theory DOJ presses here. Compl., *United States v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal. Sept. 25, 2025), ECF No. 1; Compl., *United States v. Oregon*, 6:25-cv-01666-MTK (D. Or. Sept. 16, 2025), ECF No. 1.

4

of this type "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*, 379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant text of the statute in *Powell* was identical to the relevant text of Section 20705, providing that the federal courts "shall have jurisdiction by appropriate process to compel" the production sought. 26 U.S.C. § 7604(a). "Accordingly," in a Title III case, "the Court applies the Federal Rules of Civil Procedure as in any other case." *Oregon*, 2026 WL 318402 at *8.

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). But *Lynd* is irreconcilable with *Powell*, which the Supreme Court decided two years later. *Oregon*, 2026 WL 318402 at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."). Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225–26, *Powell* explains—again, construing a statute with identical text to that found in Title III—that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)). This Court should follow *Powell*.

**II.    The Court must conduct meaningful review of DOJ's demand.**

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be

5

relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment. *See Oregon*, 2026 WL 318402 at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place.").

6

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected."). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. Here, in contrast, DOJ seeks sensitive and private information that is regularly protected from disclosure. And even *Lynd* emphasized that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand

7

relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms (specifically, the NVRA and HAVA). *See* Mem. in Support of Mot. to Dismiss, Argument § I.[3] That leads to a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to impede voting rights, not protect them. Moreover, even if DOJ could use Title III to investigate list maintenance issues governed by the NVRA and HAVA (and there is good reason to find that it cannot), DOJ has also provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations in Massachusetts, much less in all 40-plus States from which DOJ has demanded similar records. Finally, the records that DOJ seeks here involve confidential, not public, information. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of Massachusetts, and nearly every other State, too.

Federal courts have recognized as much by adjudicating DOJ's claims under the Federal Rules—and holding that DOJ's CRA claim cannot survive its mandatory encounter with Rule 12. After the California court provided for appropriate process—full briefing of motions to dismiss

---

[3] Notably, although DOJ alleged claims under the NVRA and HAVA in its first set of otherwise identical cases against states seeking the same relief it seeks here, DOJ has abandoned those claims in later iterations of these cases, including this one against Massachusetts. *See* Intervenor-Defendants' Mem. in Supp. of Mot. to Dismiss at 6. In doing so, DOJ has effectively conceded that those statutes do not entitle it to the relief it seeks, and concocted instead an ill-advised theory that the CRA operates as a catch-all authorizing any demand by DOJ for any information related to voting for any purpose, without any place for judicial review. For the reasons discussed here (and in greater detail in Intervenor-Defendants' motion to dismiss), this argument is not well founded.

under Rule 12—the court dismissed DOJ's claim.[4] *Weber*, 2026 WL 118807, at *20. So did the Oregon court.[5] *Oregon*, 2026 WL 318402 at *10, 12. Many more courts have proceeded with entertaining Rule 12 motions: defendants' and intervenors' motions to dismiss are fully briefed in Michigan, Maine, and New York, with briefing ongoing in numerous additional states.[6] With briefing already underway before this Court, there is no reason to change course and deviate from the procedures provided by the Federal Rules.

This Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," Mem. in Supp. of Mot. Compel Prod. at 10, and apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

### III.    The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion to compel production of records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: "test the sufficiency of the complaint." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010). Motions to dismiss serve a crucial gatekeeping function: they are "the tiger patrolling the courthouse gates," guarding against legally defective claims. *Correa-Martinez v. Arrillaga-*

---

[4] And it dismissed DOJ's NVRA and HAVA claims. *Weber*, 2026 WL 118807, at *14–16.

[5] It also dismissed DOJ's NVRA and HAVA claims. *Oregon*, 2026 WL 318402 at *6–7. Notably, DOJ did not file a motion to compel related to its CRA claim in Oregon. *See id.* at *8 n.1 ("Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation.") This Court should not bless DOJ's current attempt to sidestep the Federal Rules when DOJ has already conceded their applicability in a parallel case.

[6] *See, e.g.*, Reply in Supp. of Mot. Dismiss, *United States v. Benson*, No. 1:25-CV-01148 (W.D. Mich. Jan. 9, 2026), Dkt. No. 58; Scheduling Order, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), Dkt. No. 38; Reply Mem. of Law in Supp. of Mot. Dismiss & in Opp'n to Cross-Mot. to Compel, *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), Dkt. No. 86.

9

*Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). The Federal Rules likewise set an early deadline for motions to dismiss because they are a "time-sensitive . . . screening mechanism[s] designed to weed out cases that do not warrant either discovery or trial." *Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019) (citation modified). Accordingly, "the drafters of the Civil Rules" "envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases[.]" *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

As explained more fully in Intervenor-Defendants' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Massachusetts's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mem. in Support of Mot. Dismiss, Argument §§ I–III. In light of the fatal legal deficiencies in DOJ's complaint, resolving DOJ's motion to compel first would flip the process backwards, depriving Intervenor-Defendants and the Secretary of the Commonwealth of their right and opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402 at *8.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claim. Even at this early stage, it is apparent that there are potential disputes of material fact that may bear on the resolution of this case. For example, even assuming DOJ could seek records under the Civil Rights Act of 1960 to assess Massachusetts's compliance with the NVRA and HAVA (and there is good reason to find that it cannot), there is a genuine dispute of fact as to whether that is in fact DOJ's purpose.

In support of its motion, DOJ suggests that it is seeking Massachusetts's unredacted records to assess if the state is abiding by "certain recordkeeping duties" and making "reasonable efforts to maintain lists" of voters. Mem. in Support of Mot. Compel for Prod. at 4. But contrast that

representation with the alarming picture painted by public reporting and the words of the administration's own officials. DOJ reportedly seeks to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[7] According to Assistant Attorney General Harmeet Dhillon's comments, DOJ intends to use the voter information it demands to compel removal of *hundreds of thousands* of voters from the rolls.[8] Indeed, DOJ is already aggressively wielding federal power to intrude on the States' responsibility for elections: Attorney General Pam Bondi recently sent a letter to Minnesota indicating that ICE would stop its operations in that State if Minnesota turned over its voter registration list.[9] Most concerning of all is that President Donald Trump has revealed his aspiration to have the federal government "nationalize" and "take over the voting" from the States, in direct conflict with the Constitution, every State constitution, and the will of Congress expressed in the NVRA, HAVA, and other statutes.[10]

These facts—which make it rather implausible that this is simply a case about DOJ checking in on Massachusetts's compliance with list maintenance procedures—go to the core of DOJ's claim. Granting DOJ the final relief it seeks before the Secretary and Intervenor-Defendants have the opportunity to conduct discovery relevant to this and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g., Velez*

---

[7] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[8] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[9] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

[10] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to Nationalize Elections*, N.Y. Times (Feb. 2, 2026) https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

*v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004) ("[T]rial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.").

## CONCLUSION

For the reasons stated above, Intervenor-Defendants respectfully request that this Court deny DOJ's motion to compel production.

Dated: February 6, 2026                                     Respectfully submitted,

/s/ David R. Fox
David R. Fox (BBO #692372)
Kevin R. Kowalewski*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
kkowalewski@elias.law
tshaw@elias.law

*Counsel for Intervenor-Defendants the New England State Area Conference of the NAACP and the Massachusetts Alliance for Retired Americans*

\* Admitted *Pro Hac Vice*
13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 6th day of February, 2026, with a copy of this document via the Court's CM/ECF system. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ David R. Fox*
David R. Fox (BBO #692372)