## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,<br><br>    Defendant. | Case No. 1:25-cv-13816<br>(Hon. Leo T. Sorokin) |

**REPLY IN SUPPORT OF COMMON CAUSE INTERVENORS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

    I.   FEDERAL RULES OF CIVIL PROCEDURE APPLY IN THIS CIVIL ACTION. ........................................................................................................................ 1

    II.  UNDER RULE 12, DISMISSAL IS PROPER............................................................ 3

CONCLUSION................................................................................................................................ 5

# **TABLE OF AUTHORITIES**

**Cases**

*Coalition for Open Democracy v. Scanlan*,
  No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ................................................ 5
*Duncan v. Walker*,
  533 U.S. 167 (2001) .................................................................................................................. 3
*In re Admin. Subpoena No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025) ....................................................................................... 2
*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ................................................................................................. 2, 3
*United States v. Benson*,
  No. 1:25-cv-1148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ........................... 1
*United States v. Comley*,
  890 F.2d 539 (1st Cir. 1989) ..................................................................................................... 2
*United States v. Oregon*,
  No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ..................................... 2, 3
*United States v. Powell*,
  379 U.S. 48 (1964) ................................................................................................................ 1, 2
*United States v. Simon*,
  No. 25-cv-3761 (D. Minn. Mar. 3, 2026) ................................................................................. 5
*United States v. Weber*,
  No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ...................... 2, 3

**Statutes**

26 U.S.C. § 7604(a) ........................................................................................................................ 2
26 U.S.C. § 7605 ............................................................................................................................ 2
52 U.S.C. § 20507(a)(4) ................................................................................................................. 4
52 U.S.C. § 20703 ...................................................................................................................... 1, 5
52 U.S.C. § 20705 .......................................................................................................................... 2
52 U.S.C. § 21083(a)(5)(A) ........................................................................................................... 4
52 U.S.C. § 21085 .......................................................................................................................... 4

**Rules**

Federal Rules of Civil Procedure 12 ............................................................................................. 1
Federal Rules of Civil Proceedure 81(a)(5) .................................................................................. 2

## INTRODUCTION

The United States fails to plausibly plead that the Attorney General set forth, in writing, "the basis and the purpose" of her demand for Massachusetts voters' sensitive data, as required for a claim under Title III of the CRA. 52 U.S.C. § 20703. In opposing dismissal, *see* U.S. Mem. in Opp'n to MTD, Dkt. No. 70-1 ("U.S. Br."), the United States fails to explain how it satisfied that requirement, and instead primarily insists that the CRA—a statute designed to protect the rights of voters—requires voters personal data to be summarily turned over, without procedural protections or judicial review. That position contravenes statutory text, binding precedent, the Federal Rules, and common sense. It is alarming in light of statements by federal officials, including President Trump himself, who suggested his political party should "nationalize" federal elections.

The Attorney General has invoked this "court's process . . . to enforce" her information demand, but the "court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58 (1964). Because the demand does not meet the applicable statutory requirements, this Court should make the same determination as other district courts and dismiss without leave to replead.[1]

## ARGUMENT

**I. FEDERAL RULES OF CIVIL PROCEDURE APPLY IN THIS CIVIL ACTION.**

The United States wrongly claims that under the CRA judicial review is so "severely limited" that courts may not consider the legal sufficiency of the complaint pursuant to Rule 12.[2] U.S. Br. 2, 6-11, 14-15, 17-18, 21-22. But "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *United States v. Weber*, No. 2:25-CV-09149-

---

[1] *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG, 2026 WL 362789, at *9 (W.D. Mich. Feb. 10, 2026) dismissed on grounds that the voter file did not "come into [the Secretary's] possession." This Court can dismiss on that basis, too. *See* Common Cause MTD Br., Dkt. No. 50 at 11 n.12.

[2] Intervenors incorporate by reference their Opposition to the United States' Motion to Compel (Dkt. No. 53), which also addresses these arguments.

DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026). Rather, where a statute grants the court jurisdiction to enforce an investigatory demand "by appropriate process" but "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Powell*, 379 U.S. at 58 n.18 (citation omitted); *accord* Fed. R. Civ. P. 1, 81(a)(5) (Rules apply "in all civil actions and proceedings" including "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute."). The CRA contains *the exact same statutory language* that was interpreted in *Powell* to require application of the Federal Rules. *See* 52 U.S.C. § 20705 ("the United States district court . . . shall have jurisdiction by appropriate process"). And as in *Powell*, it contains no other provision specifying some different procedure to be followed.

*Powell* forecloses the United States's argument that the "sufficiency" of the Attorney General's demand "is not open to judicial review" under the Federal Rules, U.S. Br. 15 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)). *See United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026). The United States tries to distinguish *Powell* because the statute at issue there prohibited "unnecessary examination or investigations"—language not present in the CRA. U.S. Br. 8-9 (quoting 26 U.S.C. § 7605(b)). But *Powell*'s holding that "the Federal Rules of Civil Procedure apply" in enforcement proceedings did not rely on that language; rather, it relied on other statutory language that is nearly identical to the CRA's. *See* 379 U.S. at 52, 58 n.18 (citing 26 U.S.C. § 7604(a)). Courts apply the Federal Rules in enforcement proceedings involving varied federal agencies and statutes to determine, among other things, whether the demand at issue is being advanced for an improper purpose. *See, e.g.*, *United States v. Comley*, 890 F.2d 539, 541 (1st Cir. 1989); *In re Admin. Subpoena No. 25-1431-019,* 800 F. Supp. 3d 229, 237 (D. Mass. 2025). As in *Powell* and those cases, the Federal Rules apply in this action.

2

## II.  UNDER RULE 12, DISMISSAL IS PROPER.

The United States fails to refute the multiple grounds for dismissal in Intervenors' motion. *First*, the Attorney General's August 14 Letter nowhere claimed "Section 303 of the CRA" was the "basis" for the demand, as the United States now asserts. *Compare* U.S. Br. 14. And in any event, the "basis" for a Title III demand must be the *factual* basis for the belief that there may be reason to investigate. *See* Common Cause MTD Br., Dkt. No. 50 ("CC MTD Br."), at 12-13 (collecting cases). The statutory requirement to state "the basis" for a Title III demand would be rendered "wholly superfluous" if it could be fulfilled by tautologically referencing Title III itself. *See e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001). This is reason enough to dismiss. *See Oregon*, 2026 WL 318402, at *9 (identical demand "contain[ed] no statement of a factual basis").

Nor is any other potential "basis" pleaded. Neither the demand nor the pleadings identify any concerns with Massachusetts's list maintenance efforts. *See* CC MTD Br. 13-15. *Compare Lynd*, 306 F.2d at 229 n.6 (demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting …."). The United States suggests it may be sufficient to point to "possible violations" of federal law.[3] U.S. Br. 16. But it has not even done that. Title III does not authorize a pure "fishing expedition of voter records in any state looking for concerns, without identifying a single issue with the state's policies beforehand." *Weber*, 2026 WL 118807, at *9.

*Second*, as to "the purpose" of the demand, the United States has failed to articulate a plausible reason why it would need the entire, unredacted voter file to "ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 22. HAVA

---

[3] The reference to North Carolina, where there had apparently been systematic errors in the state's collection of voter data, *see* U.S. Br. 17 n.6, highlights the absence of any such basis here.

requires states to collect driver's license numbers or partial social security numbers. 52 U.S.C. § 21083(a)(5)(A). But if the United States simply wants to "verify that [Massachusetts is] collecting these numbers," U.S. Br. 16, it can look at the voter registration form, which asks for them, *see* Mass. Official Mail-In Voter Registration Form (Ex. A to Savitzky Reply Decl.). It can inquire about collection practices or data entry procedures. It can review a redacted voter file showing whether or not those fields contain any data. It does not need the unredacted contents of the voter file—and it has no authority to second-guess Massachusetts's "specific choices on the methods of complying with the requirements of [HAVA]," 52 U.S.C. § 21085.

Nor has the United States articulated how this data might be needed to enforce the NVRA's requirements for voter list maintenance. The United States now says it needs the unredacted voter file because driver's license and social security data are "necessary to identify duplicate registration records, registrants who have moved, and registrants who have died, or who are otherwise no longer eligible to vote in federal elections." U.S. Br. 23. But even if a snapshot of the voter file served that purpose (which it does not, *see* CC MTD Br. 14 & n.14), the NVRA expressly tasks the states with maintaining the rolls and identifying ineligible voters, and requires only that they make a "reasonable effort" to do so by conducting a "general program" to remove people who have died or moved, 52 U.S.C. § 20507(a)(4), subject to the NVRA's voter-protective terms. The United States may wish it could take over Massachusetts's role entirely and dictate who must be removed, *see* CC MTD Br. 7-8, 16-17 (describing DOJ MOU implementing such an arrangement), but it does not need the unredacted voter file to ensure the state's compliance with the NVRA.

Moreover, the United States's asserted purpose, even if it were facially valid, is pretextual. Its intentions to build an illegal national voter database are not mere "third-party hearsay," U.S. Br. 18; they are indicated by the statements of current and former federal officials, as well as the

4

Untied States's own admissions in court. *See* CC MTD Br. 4-10, 15-17 & nn.3-10. Even now, the United States's carefully worded statement in its brief (at 18 & n.7) does not disclaim that DOJ might aggregate state voter files at some point other than "[w]hen the Civil Rights Division performs [an] individualized assessment," or that an agency like DHS or DOGE might do so. Notably, a DOJ attorney told a court in Minnesota last week that he "did not know the answer" to whether the Attorney General could use state voter files to "look at every person who has voted in the country." Hrg. Tr. 49-50, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Mar. 3, 2026) (Ex. B to Savitzky Reply Decl.). Under the circumstances, the Attorney General has not stated "*the* purpose" of her demand as required. 52 U.S.C. § 20703 (emphasis added).

*Finally*, the United States fails to address the need for redaction to protect voters' rights, including federal constitutional rights, which is another basis for dismissal. *See* CC MTD Br. 17-20. The United States claims that "private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights." U.S. Br. 24 (citing *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025)). But the case it cites proves Intervenors' point. There, the voter file was produced subject to severe restrictions, including a protective order restricting its use to the present litigation, limiting viewing to designated personnel using "air-gapped computers," mandating destruction of the data after the case closed, and barring production of social security numbers altogether. *See Scanlan* Protective Order at 4, 13-17 (Ex. C to Savitzky Reply Decl.); Sched. A to Protective Order at 2-3 (Ex. D to Savitzky Reply Decl.). Here, the United States pleads that it seeks a massive trove of protected personal information subject to no restrictions except its own assurances that it will comply with federal privacy rules as it sees fit.

## CONCLUSION

For these reasons, the United States's Complaint should be dismissed.

Dated: March 13, 2026                                        Respectfully submitted,

                                                                                          /s/      Ari J. Savitzky

Jessie J. Rossman (BBO # 670685)                             Ari J. Savitzky*
Suzanne Schlossberg (BBO #703914)                            Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION                               Sophia Lin Lakin*
  FOUNDATION OF MASSACHUSETTS, INC.                         AMERICAN CIVIL LIBERTIES UNION FOUNDATION
One Center Plaza, Suite 850                                  125 Broad Street, 18th Floor
Boston, MA 02108                                             New York, NY 10004
Tel.: (617) 482-3170                                         Tel.: (212) 549-2500
jrossman@aclum.org                                           asavitzky@aclu.org
sschlossberg@aclum.org                                       tlee@aclu.org
                                                             slakin@aclu.org

                                                             * *admitted pro hac vice*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, a true and correct copy of the above document was filed via the Court's ECF system and that a copy will be sent automatically to all counsel of record via that system.

*/s/ Ari Savitzky*
Ari Savitzky