IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM FRANCIS GALVIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,<br><br>    Defendant. | CIVIL ACTION<br>NO. 1:25-cv-13816-LTS |

**SECRETARY GALVIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND IN OPPOSITION TO MOTION TO COMPEL**

I.     **The United States's Written Demand is Reviewable.**

The Federal Rules of Civil Procedure apply in this case, and this Court has both the authority and the obligation to review whether the United States's written demand complies with the basic statutory requirements of 52 U.S.C. § 20703. Investigative powers held by executive branch agencies are granted by Congress. The scope, and the agency's exercise of those powers, are bound by the statute Congress enacted. Congress knows how to grant agencies administrative subpoena authority. It did so in the Civil Rights Act of 1957, Pub. L. 85-315, § 105(f), 71 Stat. 634, 636 (1957) (Civil Rights Commission), and again in the Civil Rights Act of 1965. Pub. L. 89-110, § 9(c), 79 Stat. 437, 441-42 (1965) (Civil Service Commission). It did not do so in 52 U.S.C. § 20703, and the United States cannot evade a judicial determination of whether it has complied with the requirements of the statute that grants it the power to inspect records.

Because 52 U.S.C. § 20703 "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964); *cf. Equal Emp't Opportunity Comm'n v. Rogers Bros.*, 470 F.2d 965, 966 (5th Cir. 1972) (civil action to compel compliance with statutory reporting requirements resolved through Rule 56 motion and injunctive relief). Even if this Court's review of a written demand under 52 U.S.C. § 20703 is limited, the Court still must review whether the United States has met its statutory requirements to inspect records under 52 U.S.C. § 20703.

II.    **The Complaint Should Be Dismissed and Motion to Compel Denied Because the United States Articulates No Factual Basis for its Demand.**

This Court does not need to decide whether it may probe the factual support for an Attorney General's stated basis for her demand under 52 U.S.C. § 20703, because the United States has identified no factual basis for its demand whatsoever. *See* Opp'n 14, 23, ECF No. 72

1

(claiming "basis" for written demand for Massachusetts' registered voter list is "the NVRA and HAVA" and "purpose" is "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA").[1] This requires dismissal of its Complaint.

The United States is wrong in claiming that 52 U.S.C. § 20703 does not require it to state the factual basis for its investigative demand, and that it can merely identify any federal statute as its "basis" instead.[2] No court has accepted this argument. *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *8-9 (D. Or. Feb. 5, 2026) (explaining "basis" means the "factual basis for investigating a violation of a federal statute" and concluding United States had identified none); *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, __ F. Supp. 3d __, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026) (explaining "basis is the reasoning provided by the DOJ regarding the evidence behind its investigation" and concluding United States had identified none); *see also United States v. Benson*, No. 1:25-cv-1148, __ F. Supp. 3d __, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026) (requiring factual basis for demand). The Fifth Circuit cases on which the United States relies all involved a statement by the Attorney General of the factual basis for his demand, not just a bare reference to a statute. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962) (factual basis for demand was "information in the

---

[1] The United States also has not been consistent in asserting the purported legal basis for its demand. In its opposition, the United States claims that "the basis" for its demand is the Civil Rights Act of 1960. Opp'n 4, 18. It cites no authority for the proposition that the "basis" requirement could possibly be satisfied by mere citation to 52 U.S.C. § 20703.

[2] *United States v. Morton Salt* provides no support for the proposition that the Attorney General may demand voting records under Title III with no factual basis to suspect Massachusetts is violating any laws. 338 U.S. 632 (1950). *Morton Salt* concerned the Federal Trade Commission's request for additional reporting from salt producers the Commission had already determined, after full administrative proceedings, were engaged in unfair trade practices, resulting in a cease and desist order and judicial decree. The Court held the Commission had authority to "assur[e]" itself that the salt producers remained in compliance with its cease and desist order, and to further investigate the producers. *Id.* at 638-39, 642.

2

possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction").[3]

Even in an action to enforce an administrative subpoena, where the requirements for enforcement are "not onerous"[4]—and where, unlike here, Congress has not explicitly required the agency to state "the basis" for its demand—a court will not enforce a subpoena absent a factual basis for its issuance. *See United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3-4 (1st Cir. 1996) (affirming enforcement of subpoena based on factual basis including employee complaint and preliminary investigation). *See also, e.g.*, *United States v. Comley*, 890 F.2d 539, 542 (1st Cir. 1989) (adequate showing of "proper purpose" for subpoena where affidavit alleged facts suggesting violations of federal law).

While the United States "need not provide probable cause for its investigations . . . it cannot use its subpoena power to go on a fishing expedition." *In re Admin. Subpoena*, 800 F. Supp. 3d 229, 238 (D. Mass. 2025) (quashing Department of Justice subpoena to hospital because DOJ had not offered "an iota of suspicion" hospital was violating federal law). Evidence that an agency has a different, improper purpose for a subpoena is an "abuse of the court's process" sufficient to deny its enforcement. *Comley*, 890 F.2d at 543; *In re Admin. Subpoena*, 800 F. Supp. 3d at 238-39 (quashing subpoena because DOJ public statements disclosing improper purpose and "astonishingly" overbroad subpoena were sufficient to demonstrate it had

---

[3] Nor do the Civil Rights-era cases support the proposition that the Attorney General does not need a factual basis for a demand under 52 U.S.C. § 20703. In those cases, it was not disputed that the Attorney General had articulated a factual basis for his investigations into racial discrimination in voting.

[4] "In order to obtain judicial backing the agency must prove that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena." *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996).

issued for improper purpose). And, the information sought by the subpoena must be "reasonably relevant" to the agency's investigation. *Comley*, 890 F.2d at 541.

The demand in this case fails even this limited inquiry. The United States has not stated a "proper purpose" under 52 U.S.C. § 20703 because the subpoena is not related, in any way, to a voting-rights investigation. The United States's breathtakingly overbroad construction of the statute, s*ee* Opp'n 12-14, would grant the United States limitless authority to obtain state voting records upon the mere citation of any federal statute, even one unrelated to voting. This absurd interpretation is inconsistent with the statutory context, the purpose of the Civil Rights Act of 1960, clear legislative intent, and the statutory framework of the Civil Rights Acts as a whole. *See Hernández-Miranda v. Empresas Díaz Massó, Inc.*, 651 F.3d 167, 172 (1st Cir. 2011) (looking "to the context of the larger statutory scheme" to "best effectuate congressional intent); *see also* Sec'y Mem. 1-3, ECF No. 57 (describing Civil Rights Act of 1960 statutory context, legislative intent, and voting-rights statutory framework generally). In *Lynd*, the Fifth Circuit explicitly held that while a records demand authorized by § 20703 "is investigative in nature. Its *purpose* is to enable the Attorney General to determine whether § 1971[5] suits or similar actions should be instituted" and "to enable him to obtain evidence for use in such cases if and when filed." 306 F.2d at 228 (emphasis added). Thus, *Lynd* plainly states that the purpose of § 20703 is restricted to enabling the United States to obtain evidence for "§ 1971 suits or similar actions."

The United States also has failed to articulate a "proper purpose" because it has not articulated any factual basis for its claimed investigation into Massachusetts's NVRA and HAVA compliance. And, its exceedingly broad demand—a snapshot of Massachusetts'

---

[5] Now codified at 52 U.S.C. § 10101, 42 U.S.C. § 1971 authorizes the Attorney General to seek injunctions against interference with the right to vote based on race.

registered voter list with all voters' personally-identifying information—is not "reasonably relevant" to investigating Massachusetts's list-maintenance programs and activities,[6] nor does it fall within the scope of the records Massachusetts must retain under 52 U.S.C. § 20703. *See* Sec'y Mem. 12-16.[7] Although the United States now states a new rationale for its demand (that it did not articulate in its written demand, or its Complaint)—to "verify" that states are collecting social security and driver's license numbers from voters as they register, as required by HAVA, Opp'n 16—it has not demonstrated why each and every Massachusetts registered voter's social security and driver's license number is "reasonably relevant" to this new purpose.

Finally, even if the United States's asserted purpose were within the scope of 52 U.S.C. § 20703—which it is not—there is also credible evidence that the United States has a different, improper purpose for seeking states' voter lists. *Weber*, 2026 WL 118807, at *10-12 (DOJ public statements evidence that DOJ's stated purpose was pretextual and hiding true motive that fell outside DOJ statutory authority to demand records); *see also In re Admin. Subpoena*, 800 F. Supp. 3d at 239 (pretextual purpose basis to quash subpoena). Thus, because the United States has not complied with 52 U.S.C. § 20703, the United States's Complaint must be dismissed, and its motion to compel denied, with prejudice.

---

[6] Neither the NVRA nor HAVA grant the Attorney General any authority to assess voter eligibility on the state's list on a voter-by-voter basis. *See* 52 U.S.C. § 20507(a)(4); 52 U.S.C. §§ 21083(a), 21085.

[7] The United States's argument about the scope of the records that may be inspected under 52 U.S.C. § 20703 relies on: (1) a different statute with a different scope—the public disclosure provision of the NVRA, 52 U.S.C. § 20507(i); and (2) Georgia and Texas's agreements to provide their voter lists to DOJ with social security and driver's license numbers without any judicial determination that DOJ was acting within its statutory authority. Opp'n 20-21.

Respectfully submitted,

WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,

By his attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Phoebe Fischer-Groban*
Anne Sterman, BBO No. 650426
Phoebe Fischer-Groban, BBO No. 687068
*Assistant Attorneys General*
Vanessa A. Arslanian, BBO No. 688099
*State Trial Counsel*
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2524
anne.sterman@mass.gov
phoebe.fischer-groban@mass.gov
vanessa.arslanian@mass.gov

## CERTIFICATE OF SERVICE

I, Phoebe Fischer-Groban, Assistant Attorney General, certify that this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by first-class mail on March 13, 2026.

/s/ *Phoebe Fischer-Groban*
Phoebe Fischer-Groban
Assistant Attorney General